**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BALDOMERO BULMARO DE PAZ GOMEZ, individually and on behalf of themselves and all other similarly situated persons, known and unknown, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 23 C 1606 |
| v. | ) ) | Judge Sara L. Ellis |
| EL MILAGRO, INC., | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Baldomero Bulmaro De Paz Gomez sued Defendant El Milagro, Inc. ("El Milagro"), alleging that El Milagro failed to pay him for the time he worked whenever he was unable to take his scheduled 30-minute lunch breaks. Gomez claims, on behalf of himself and all others similarly situated, that El Milagro violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1 *et seq.* Now, El Milagro moves for summary judgment on all claims against it.

Because Gomez has failed to establish an issue of material fact as to his IMWL claims but has made an adequate showing regarding his IWPCA claim, the Court grants summary judgment for El Milagro as to Gomez's IMWL claims and denies summary judgment as to Gomez's IWPCA claim. Further, the Court orders Gomez to supplement his Federal Rule of Civil Procedure 26 initial disclosures and responses to El Milagro's interrogatories to include a computation of damages by April 18, 2025. El Milagro may move to compel or for additional

discovery in response to Gomez's supplemental disclosures and interrogatory response by May 2, 2025.

## BACKGROUND[1]

El Milagro, an Illinois corporation, manufactures and sells tortillas. In 2011, Gomez began working for El Milagro as a route helper[2] in Chicago. El Milagro's route helpers are at will employees. While employed by El Milagro, Gomez traveled in El Milagro's commercial motor vehicles to assist route salesmen in delivering El Milagro products to customers in Illinois and other states. El Milagro paid Gomez an hourly wage. Each day that Gomez worked more than five hours, El Milagro deducted 30 minutes from his hours for a 30-minute unpaid lunch break. El Milagro terminated Gomez's employment on June 13, 2022.

When Gomez started work for El Milagro, Gomez received and signed a copy of the El Milagro route helper job description. The El Milagro route helper job description lists general and specific duties, including:

- Monitor and report equipment used on route, condition.

- Must take lunch while on route and coordinate with Route Salesperson.

- Help route salesperson shrink wrap product before it being loaded onto truck[.]

- Assist route salesman unload and bring product into store in a safe way[.]

---

[1] The Court derives the facts in this section from admissible and supported portions of the parties' Statement of Undisputed Facts and Statement of Additional Facts (Docs. 63, 64-8, and 71), and the exhibits attached to the factual statements. The Court takes all facts in the light most favorable to Gomez, the non-movant. The Court resolved the parties' motion to resolve factual disputes on July 9, 2024. Doc. 60. The Court denied El Milagro's motion to strike Gomez's memorandum in response to El Milagro's motion for summary judgment and response to El Milagro's statement of undisputed facts on September 17, 2024. Doc. 74.

[2] In some depositions and case materials, individuals sometimes refer to "route helpers" as "route assistants." The Court understands that these references are to the same job position and that this is the job position Gomez possessed while working for El Milagro. For clarity, the Court uses the title "route helper" in this Opinion.

- Keep all empty pallets in truck in an organized and safe way.

- At the end of the work day[,] help route salesperson unload and empty truck[.]

Doc. 63-7 at 2.

Additionally, Gomez reviewed and signed a copy of El Milagro's Employee Handbook

(the "Handbook"). In relevant portion, the Handbook provides that:

> A thirty (30) minute unpaid meal period will be scheduled
> approximately at the mid-point of the work day for hourly, non
> exempt employees. During the meal periods, employees are
> relieved of all duties. Employees are required to record meal
> periods on their time cards. No food or refreshment are to be
> consumed in the work area; employees must use the lunch room
> for this purpose.

Doc. 63-6 at 4. Further, the signature page of the Handbook stated:

> I understand my employment is at will, and neither I nor the
> Company have entered into a contract regarding the duration of my
> employment. I am free to terminate my employment with El
> Milagro at any time, with or without reason. Similarly, the
> Company has the same right to terminate my employment at any
> time, with or without reason.

Doc. 63 ¶ 11 (providing the language from the Handbook translated from Spanish to English).

El Milagro's Rule 30(b)(6) corporate representative, Hortencia Calderon, testified that

route helpers clocked in and out for their shifts, but because route helpers were generally out on

their routes all day, they would not clock in and out for their lunch break. Rather, the route

helpers would complete a "lunch log" where they wrote down the times they took their lunch

break. However, Calderon stated that human resources ("HR") would not review the lunch logs.

Instead, HR would deduct 30 minutes worth of pay from a route helper's paycheck for each day

the route helper worked, unless a supervisor informed HR that a route helper did not take their

30-minute lunch break. Specifically, Calderon explained that if a route helper did not take their

30-minute lunch break, the route helper was supposed to inform their supervisor so the

3

supervisor could inform HR and El Milagro would pay the route helper for that time. Calderon stated this was El Milagro's practice, although it was not a written policy. Further, to Calderon's knowledge, since 2013, there was no instance where a route helper was unable to take their 30-minute lunch break. Calderon also stated that Gomez never complained about not being able to take a lunch break.

Gomez testified that, while he worked for El Milagro, he was not able to take a lunch break four out of five days a week. Doc. 64-8 ¶ 50. Rather, he would generally work through lunch time because he would be out on a delivery route and eat while working. He stated that he complained to his supervisors and HR about not receiving a lunch break. Further, Gomez testified that he did not remember signing any contract with El Milagro and that he "never made any agreements pertaining to work" with El Milagro. However, he stated that it was his understanding when El Milagro hired him that El Milagro would pay him for all the work he performed. Gomez recorded some of his meal breaks on a "lunch log." Doc. 64-8 ¶ 50.

El Milagro's route salesman manager, Bobby Morales, testified that El Milagro allowed route helpers to have a 30-minute lunch break, specifically that it was part of a route helpers' job description for them to take such a lunch break "on their own." He stated that he was not aware of any instance where a route helper was unable to take a lunch break because of their responsibilities on the route. He also stated that he was not aware of any complaints from any route helpers about them being unable to take their lunch breaks.

El Milagro completed several "status/payroll change reports" regarding Gomez, which listed changes in his hourly pay and included a "date of contract" line of October 3, 2011.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

### I.     IWPCA Claim

First, El Milagro argues that Gomez's IWPCA claim fails as a matter of law because Gomez cannot demonstrate that Gomez and El Milagro had an agreement for El Milagro to pay Gomez for the time that Gomez worked and did not take his lunch break.  The IWPCA "provide[s] employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers."  *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 353 Ill. App. 3d 126, 129 (2004)).  The IWPCA defines "wage" narrowly as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties."  820 Ill. Comp. Stat. 115/2.  Illinois courts have held that "[a]n employment agreement need not be a formally negotiated contract" and requires only the manifestation of mutual assent. *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 356 Ill. App. 3d 1060, 1067–68 (2005) (citing *Zabinsky v. Gelber Grp., Inc.*, 347 Ill. App. 3d 243, 249 (2004)).  "[A]n employment agreement can be entirely implicit" and "employers and employees can manifest their assent to conditions of employment by conduct alone."  *Id.*

Based on the evidence presented, a reasonable jury could find that Gomez and El Milagro were parties to an implicit or unwritten agreement for El Milagro to pay Gomez for the hours he actually worked performing his essential job duties as a route helper, including if he worked through his 30-minute lunch break on such duties.  Gomez concedes that he did not have any written agreement or contract with El Milagro.  Doc. 64-8 at 3 ("Plaintiff admits that he had no written contract or agreement with Defendant.").  Rather, the evidence supports that there may have been mutual assent between the parties as to these terms because Gomez testified that he

6

understood that El Milagro would pay him for the time he worked, and El Milagro's representative testified that El Milagro would pay a route helper if El Milagro was aware that the route helper worked through their lunch break on their route. Together, a reasonable jury could find that this evidence supports that both parties had the same idea about the terms of Gomez's employment and payment, a mutual assent. *See Bradley v. Vill. of Univ. Park*, 59 F.4th 887, 903 (7th Cir. 2023) ("An agreement 'requires only a manifestation of mutual assent . . . without the formalities and accompanying legal protections of a contract.'" (citation omitted)).

El Milagro's argument that it did not agree to pay Gomez for the specific activities at issue, namely Gomez taking a lunch break, misunderstands the issue. Gomez is not seeking payment for when he actually took a 30-minute lunch break, rather he is requesting payment for performing an additional 30 minutes of his normal job functions when those functions prevented him from taking his scheduled lunch break. *See Magpayo v. Advocate Health & Hosps. Corp.*, No. 16 C 1176, 2018 WL 950093, at *8 (N.D. Ill. Feb. 20, 2018) (rejecting a defendant's argument that the parties did not have an agreement to pay a plaintiff for the time worked during a scheduled lunch break and finding that "[b]y deducting 30-minutes' pay from each of Plaintiff's shifts even though she never got a lunch break, Defendant ostensibly deprived Plaintiff of wages it owed her under that employment agreement"). Further, that Gomez seeks payment for performing his ordinary job functions distinguishes this case from those where courts have found a lack of mutual assent when an employee seeks payment for time spent engaged in ancillary activities that an employer argues fall outside the scope of the duties the employer agreed to pay the employee to complete. *See, e.g.*, *Chagoya v. City of Chicago*, 992 F.3d 607, 624–25 (7th Cir. 2021) (affirming summary judgment for the defendant where the court found that there was no implicit agreement to compensate the plaintiff for "their commute

7

time, the loading and unloading of equipment from their vehicles to their residences, and the securing of that equipment inside their residences"); *Brown v. Lululemon Athletica, Inc.*, No. 10 C 05672, 2011 WL 741254, at *3 (N.D. Ill Feb. 24, 2011) (finding that a plaintiff did not adequately plead an agreement between the parties to pay the plaintiff for activities ancillary to her normal employment responsibilities, such as attending one exercise class a week and listening to a motivational CD).

Additionally, Gomez's statement in his deposition that he did not make "any agreements pertaining to work" with El Milagro does not foreclose his claim because in the context of his broader deposition, it creates a factual question that a jury must resolve. Gomez made this statement in answer to a question about whether he entered a verbal agreement with El Milagro; he separately testified that his it was his understanding that El Milagro would pay him for the work he provided. A jury could potentially find that Gomez's testimony about not making an agreement with El Milagro was meant narrowly, as to express written or verbal agreements, or it could find that the statement forecloses Gomez's claim. However, at this stage, taking the evidence in the light most favorable to Gomez, the Court finds that Gomez has presented sufficient evidence to create an issue of material fact as to his IWPCA claim. The Court denies El Milagro's motion to dismiss Gomez's IWPCA claim.

## II.     IMWL Claims

### A.     The Motor Carrier Exemption

The IMWL carves out an exception to its protections for individuals who work "[f]or a motor carrier and with respect to whom the U.S. Secretary of Transportation has the power to establish qualifications and maximum hours of service under the provisions of Title 49 U.S.C. or the State of Illinois under Section 18b-105 . . . of the Illinois Vehicle Code" (the "Motor Carrier

Exemption"). 820 Ill. Comp. Stat. 105/3(d)(7). El Milagro argues that the Motor Carrier Exemption bars Gomez's IMWL claims. El Milagro has the burden to show that the Motor Carrier Exemption applies. *See Cantu v. Brink's Co.*, 186 F. Supp. 3d 846, 848–49 (N.D. Ill. 2016) (citation omitted).

Gomez argues that El Milagro does not qualify for the Motor Carrier Exemption because it is not a "motor carrier." The IMWL does not itself define the term "motor carrier." However, both Illinois and federal law distinguish between a "motor carrier" and a "motor private carrier," or a "private carrier by motor vehicle," such that a "motor carrier" is a group distinct from and not including a "motor private carrier" or "private carrier by motor vehicle." *See* 49 U.S.C. § 13102(14)-(15) (defining the term "motor carrier" and then the term "motor private carrier," which must be a "person, other than a motor carrier"); 624 Ill. Comp. Stat. 5/18c-1104(19), (27) (defining a "motor carrier" to require transportation "for hire" and a "private carrier by motor vehicle" to exclude transportation "for hire"). The Fair Labor Standards Act ("FLSA") contains an exemption similar to the IMWL's Motor Carrier Exemption that applies to both motor carriers and motor private carriers. *See, e.g.*, *Stingley v. Laci Transp. Inc.*, 729 F. Supp. 3d 821, 828 (N.D. Ill. 2024) (describing the relevant federal statutes). The IMWL expressly limits the Motor Carrier Exemption to motor carriers and contains no reference to private carriers by motor vehicle or motor private carriers. *See* 820 Ill. Comp. Stat. 105/3(d)(7).

In its memorandum to support its motion for summary judgment, El Milagro argued at length that it is a motor private carrier. *See, e.g.*, Doc. 62 at 1 ("El Milagro indisputably qualifies as a private motor carrier[.]"). For the first time, in its reply brief, El Milagro argued that it is actually a motor carrier. Doc. 66 at 8. Because El Milagro raised the argument that it is a motor carrier for the first time on reply, El Milagro waived that argument, and the Court will not

consider it.  *See United States v. Williams*, 85 F.4th 844, 849 (7th Cir. 2023) ("Just as undeveloped arguments are waived, so are arguments raised for the first time in reply briefs."); *White v. United States*, 8 F.4th 547, 552–53 (7th Cir. 2021) (holding that arguments raised for the first time in a reply brief are waived as they leave no chance for the other party to respond). Because El Milagro failed to argue that it was a motor carrier, its claim that the Motor Carrier Exemption applies fails.  *See Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 783 (N.D. Ill. 2007) ("Defendant does not contend that it was a motor carrier.  Therefore, there is no sufficient showing that the Motor Carrier Act exclusion is applicable to plaintiffs' IMWL claim.")

Further, even if this Court were to consider El Milagro's argument, under the applicable definitions it appears that El Milagro is a motor private carrier, and not a motor carrier, because it employs individuals, like Gomez, to transport its own products to customers.  El Milagro is not itself a company providing transportation for-hire, rather the transportation furthers El Milagro's primary commercial enterprise of selling tortillas.  *See* 49 U.S.C. § 13102(14)–(15); 624 Ill. Comp. Stat. 5/18c-1104(19), (27).  Therefore, under the IMWL, the Motor Carrier Exemption does not apply to El Milagro.

### B.    Illinois Minimum Wage Claim

Next, El Milagro argues that the undisputed evidence supports that it paid Gomez more than the Illinois minimum wage in each work week, including overtime, foreclosing Gomez's IMWL minimum wage and overtime claims.  The IMWL requires an employer to pay employees a minimum wage for each hour of work.  820 Ill. Comp. Stat. 105/4(a)(1).  Further, unless an exemption applies, an employer must pay their employee time and a half for hours worked more than 40 hours in one work week.  820 Ill. Comp. Stat. 105/4a(1).  Gomez argues that the City of

Chicago minimum wage rate applies to his claim and under that rate, which is higher than the Illinois minimum wage, El Milagro violated the IMWL.

In previous cases where a plaintiff has brought parallel claims under the FLSA, the IMWL, and the Chicago Minimum Wage Ordinance ("CMWO"), courts have observed that federal, state, and local law can each establish different minimum wages. *See Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 883 (N.D. Ill. 2022). Both the FLSA and the IMWL contain provisions stating that they do not excuse or override local ordinances that set a higher minimum wage. *See* 29 U.S.C. § 218; 820 Ill. Comp. Stat. 105/13. Under this authority, in cases involving parallel claims under the FLSA, the IMWL, and the CMWO, courts have found that the highest applicable minimum wage should apply across all claims. *See Kim v. Maha*, No. 22 C 2375, 2024 WL 1676940, at *3 (N.D. Ill. Apr. 18, 2024) ("Federal law makes clear that when there are competing minimum wage requirements, an employee is entitled to the highest applicable minimum wage."); *Zavala-Alvarez*, 617 F. Supp. 3d at 883 ("When an employee is subject to federal, state, and municipal minimum wage laws, the employee is entitled to the highest of the minimum wages.").

In this case, Gomez has not brought parallel claims under the FLSA or the CMWO, rather he has only brought an IMWL claim. Further, his second amended complaint does not contain any allegations that the CMWO applies, although it does allege that Gomez worked, at least partially, in Chicago. *See* Doc. 43 at 1–2. The language of the IMWL sets its own specific minimum wage rates. 820 Ill. Comp. Stat. 105/4(a)(1). The CMWO sets different, higher minimum wage rates. Chi. Mun. Code § 6-105-020 (2024), https://codelibrary.amlegal.com/ codes/chicago/latest/chicago_il/0-0-0-2639765. In opposition to El Milagro's motion for summary judgment ,Gomez argued for the first time that the CMWO's minimum wage rates

applied to him.  He has not directed the Court to any authority to support that the CMWO's minimum wage rates should apply in a case where the plaintiff has not alleged a CMWO claim, an independent cause of action from an IMWL claim.  *See* Chi. Mun. Code § 6-105-110 (establishing a private cause of action for violations of the CMWO).  Further, the Court declines to treat this argument as a constructive motion to amend the complaint.  *Cf. Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489–90 (7th Cir. 2023) (explaining that it is generally inappropriate for a plaintiff to raise new claims in their brief in opposition to summary judgment, but providing district courts with discretion to treat new claims presented in briefing as a constructive motion to amend).  Rather, because Gomez has not alleged a CMWO violation, no conflict exists between the minimum wage rates alleged by the plaintiff and so the IMWL minimum wage rate controls.

Gomez does not dispute that under the IMWL minimum wage rates that, even if the Court factors in the additional hours Gomez alleges that he worked, El Milagro paid him more than the IMWL minimum wage rate.  Further, in the examples he provides to argue that El Milagro did not pay him a proper minimum wage or overtime, Gomez relies on the Chicago minimum wage.  *See* Doc. 64-8 ¶¶ 60–63, 65–66.  When the Court applies the Illinois minimum wage to these examples, they support that El Milagro paid Gomez an amount above the Illinois minimum wage and in accordance with overtime requirements.  Below is a chart of the Court's calculations, accepting Gomez's asserted gross pay and hours from his response to the joint statement of undisputed facts, Doc. 64-8 ¶¶ 60–63, 65–66:

| Paragraph | Gross Pay (in Dollars) | Originally Reported Hours | Additional Hours Allegedly Worked by Gomez | Total Overtime Hours (Hours Entitled to 1.5x Pay) | Application of Equation: | Effective Hourly Wage | Applicable Illinois Minimum Wage |
|---|---|---|---|---|---|---|---|
| 60 | 430 | 40 | 2 | 2 | $\dfrac{430}{40 + (2\ x\ 1.5)}$ | $10 | $8.25 |
| 61 | 554 | 40 | 2 | 2 | $\dfrac{554}{40 + (2\ x\ 1.5)}$ | $12.88 | $9.25 |
| 62 | 600 | 40 | 2 | 2 | $\dfrac{600}{40 + (2\ x\ 1.5)}$ | $13.95 | No Date Provided |
| 63 | 1806.39 | 98.52 | 4 | 22.52 | $\dfrac{1806.39}{80 + (22.52\ x\ 1.5)}$ | $15.88 | $12 |
| 65 | 1949.39 | 120.50 | 5 | 45.50 | $\dfrac{1949.39}{80 + (45.50\ x\ 1.5)}$ | $13.15 | $9.25 |
| 66 | 1200 | 80 | 7 | 7 | $\dfrac{1200}{80 + (7\ x\ 1.5)}$ | $13.26 | $10 |

Because Gomez has not presented evidence that creates an issue of material fact as to whether El Milagro failed to comply with the IMWL and the Court need not scour the record in search of a disputed fact, the Court grants El Milagro's motion for summary judgment on Gomez's IMWL claims. *See Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005) ("[T]he district court is not 'obligated . . . to scour the record looking for factual disputes.'" (citation omitted)); *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." (citation omitted)).

## III. Damages

Finally, El Milagro argues that the Court should bar Gomez from making any showing of damages under Federal Rule of Civil Procedure 37(c)(1) and find that Gomez's claims fail as a

matter of law because Gomez did not provide a detailed computation of his claimed damages in accordance with Federal Rule of Civil Procedure 26.  Specifically, El Milagro points out that Gomez has not supplemented his Rule 26 initial disclosures to include a specific computation of damages and did not provide El Milagro with detailed damages information when El Milagro requested such information through an interrogatory.  In response, Gomez argues that he lacked sufficient information to provide a detailed computation of damages until April 2024 because El Milagro only provided records of Gomez's wages and time worked three days before the end of discovery, and any noncompliance with Rule 26 amounts to excusable neglect under the circumstances.  El Milagro disputes this and asserts that Gomez possessed sufficient information since December 2023, with its April 2024 production merely a reproduction of documents that El Milagro previously produced which contained an issue that had cut off "minimal data."  *See* Doc. 66 at 12–13.

Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to provide to the other side "a computation of each category of damages."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Further, the party must supplement their disclosures or interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. 26(e)(1)(A).  If a party fails to properly supplement their disclosures or interrogatory responses, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless" and the Court may impose additional sanctions. Fed. R. Civ. P. 37(c)(1).

"The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 755 (7th Cir. 2004)). The district court possesses broad discretion to determine whether a party's violation of Rule 26(a) was justified or harmless. *Rogers v. BNSF R.R. Co.*, 680 F. Supp. 3d 1027, 1044 (N.D. Ill. 2023) (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996)). In determining whether a party's violation was justified or harmless, a district court considers factors such as "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.* (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

Based on the evidence before the Court, the Court concludes that Gomez's failure to properly provide a computation of his damages is harmless, if remedied per the Court's directions. While the parties should have raised this issue for resolution during discovery, neither El Milagro nor Gomez filed motions to compel each other for the information they argue the opposing party improperly withheld. Further, El Milagro does not provide evidence to support its assertion that Gomez has possessed the information he would need to provide a computation of damages since December 2023. *See* Doc. 66 at 12–13 (referring to specific document numbers that are not in the case record and otherwise providing no support for the extent of the issue with the referenced production). And the record does not support that Gomez acted in bad faith. The Court thus finds that reopening discovery to a limited degree, requiring Gomez to adequately amend its disclosures and interrogatory response, and permitting El

15

Milagro to request additional discovery as needed, would cure any potential prejudice to El Milagro from permitting Gomez to present argument and evidence regarding damages. *See Brownlee v. Catholic Charities of Archdiocese of Chi.*, No. 16 C 665, 2022 WL 602535, at *16 (N.D. Ill. Mar. 1, 2022) ("[A] court can reopen discovery to cure the prejudice caused by a party's discovery failure."); *Cummings v. Dart*, No. 20 C 3753, 2022 WL 461987, at *3 (N.D. Ill. Feb. 15, 2022) (collecting cases). Further, this approach would prevent any disruption to trial, which has not yet been scheduled.

The Court thus denies El Milagro's motion for summary judgment because Gomez failed to provide a computation of damages. Gomez must supplement his Rule 26 initial disclosures and response to El Milagro's interrogatory in light of the information he now possesses regarding damages by April 18, 2025. El Milagro may move to compel or for additional discovery in response to Gomez's supplemental disclosures and interrogatory response by May 2, 2025.

## CONCLUSION

The Court grants in part and denies in part El Milagro's motion for summary judgment [61]. The Court grants summary judgment as to Gomez's IMWL claims and denies summary judgment as to his IWPCA claim. Further, the Court orders Gomez to supplement his Federal Rule of Civil Procedure 26 initial disclosures and responses to El Milagro's interrogatories to include a computation of damages by April 18, 2025. El Milagro may move to compel or for additional discovery in response to Gomez's supplemental disclosures and interrogatory responses by May 2, 2025.

Dated: February 24, 2025

_____
SARA L. ELLIS
United States District Judge

16